## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

U.S. EQUAL EMPLOYMENT            )
OPPORTUNITY COMMISSION,          )
                                 )
        Plaintiff,               )
                                 )   Civil Action No.
    v.                           )
                                 )   COMPLAINT
ROUNDY'S SUPERMARKETS, INC.,     )
                                 )   JURY TRIAL DEMANDED
        Defendant.               )
                                 )

NATURE OF THE ACTION

This is an action under the Pregnant Workers Fairness Act ("PWFA"), Title I of the Americans with Disabilities Act of 1990 ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices and to provide appropriate relief to an employee who has been adversely affected by such practices ("Aggrieved Individual"). As described with greater particularity below, Defendant Roundy's Supermarkets, Inc. ("Defendant") violated the PWFA when it failed to reasonably accommodate the Aggrieved Individual's need for a suitable space to pump breastmilk and her need to have ready access to water at her workstation. Defendant also suspended and discharged her as a result of the need to provide such accommodations, in violation of the PWFA, and subjected her to unlawful medical inquiries, in violation of the ADA.

JURISDICTION AND VENUE

1.      Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 104 of the PWFA, 42 U.S.C. § 2000gg-2(a), and Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporate by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3); and pursuant to Section 102 of the Civil Rights

Act of 1991, 42 U.S.C. § 1981a.

2.      The practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Wisconsin.

PARTIES

3.      Plaintiff United States Equal Employment Opportunity Commission ("EEOC" or "Commission") is the agency of the United States of America charged with the administration, interpretation, and enforcement of the PWFA and ADA, and is expressly authorized to bring this action pursuant to Section 104(a) of the PWFA, 42 U.S.C. § 2000gg-2(a) and by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

4.      Defendant is a large supermarket chain with locations across the Midwest.

5.      At all relevant times, Defendant has continuously been a corporation doing business in the State of Wisconsin and the Village of Shorewood Hills, in Dane County.

6.      At all relevant times, Defendant continuously had more than 500 employees.

7.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 102(2)(B)(i) of the PWFA, 42 U.S.C. § 2000gg(2)(B)(i), and Section 101(5) of the ADA, 42 U.S.C. § 12111(5).

8.      At all relevant times, Defendant has been a covered entity under Section 102(2) of the PWFA, 42 U.S.C. § 2000gg(2) and 101(2) of the ADA, 42 U.S.C. § 12111(2).

ADMINISTRATIVE PROCEDURES

9.      More than thirty days prior to the institution of this lawsuit, EEOC Charge No. 443-2024-03987 was filed with the Commission alleging violations of the PWFA and ADA by Defendant.

10.     On March 25, 2025, the Commission issued a Letter of Determination, and on

May 8, 2025, the Commission issued to Defendant an amended Letter of Determination, finding reasonable cause to believe that Defendant violated the PWFA and ADA when it denied the Aggrieved Individual's accommodations for her pregnancy-related medical conditions and denied her employment opportunities because of the need for the accommodation, in violation of the PWFA, and subjected her to unlawful medical inquiries, in violation of the ADA.

11. The Commission invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12. The EEOC engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Letters of Determination.

13. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

14. On May 15, 2025, the Commission issued Defendant a Notice of Failure of Conciliation.

15. All conditions precedent to the institution of this lawsuit have been fulfilled.

STATEMENT OF FACTS

16. The Aggrieved Individual worked for Defendant as a cake decorator from on or about September 13, 2023, through on or about August 16, 2024, beginning her employment at Defendant's Pick 'n Save location in Madison, Wisconsin.

17. Defendant owns and operates grocery stores under a variety of names, including Pick 'n Save and Metro Market.

18. During her employment, the Aggrieved Individual became pregnant and took maternity leave following the birth of her child in early 2024.

19.     The Aggrieved Individual returned to work on June 3, 2024, at the same Pick 'n Save location in Madison, Wisconsin.

20.     Upon returning to work, the Aggrieved Individual requested two accommodations to support lactation: a 20-minute break every four hours to pump breast milk, and access to drinking water at her workstation to maintain hydration and milk supply.

21.     The Aggrieved Individual provided store management with a doctor's letter explaining and supporting both accommodation requests.

22.     Store management at the Madison Pick 'n Save approved both requests.

23.     On June 16, 2024, Defendant transferred the Aggrieved Individual to another one of its grocery stores, located in Shorewood Hills, Wisconsin, which operated under the Metro Market brand name.

24.     The Aggrieved Individual renewed her accommodation requests to management at Defendant's Shorewood Hills Metro Market.

25.     Defendant's store manager approved the Aggrieved Individual's request for pumping breaks, offering one of two locations: a manager's office and a work room used for labeling merchandise.

26.     These locations were not suitable for pumping breast milk: the manager's office was difficult to access and frequently locked, and the work room was dirty and lacked privacy.

27.     Defendant's store manager denied the Aggrieved Individual's request for access to water at her workstation.

28.     Defendant did not have a written policy addressing PWFA accommodations at the time of the Aggrieved Individual's employment or during the EEOC's investigation of the Charge of Discrimination.

29. On information and belief, Defendant does not presently have a written policy addressing PWFA accommodations.

30. Defendant's store manager permitted the Aggrieved Individual to store a bottle of water in the same manager's office the store manager offered for breast pumping.

31. This office was located some distance from the Aggrieved Individual's workstation and was frequently locked, requiring her to seek out a manager to unlock the office in order to remain hydrated and maintain milk supply.

32. On July 3, 2024, defendant's store manager observed the Aggrieved Individual with a water bottle near her workstation in the Metro Market bakery, and instructed her to remove it.

33. The Aggrieved Individual explained that adequate hydration was medically necessary to maintain milk supply.

34. Defendant's store manager claimed that company policy prohibited employees from keeping water at or near bakery workstations.

35. On the evening of July 3, 2024, the Aggrieved Individual emailed Defendant's store manager a copy of her medical provider's letter explaining and supporting the accommodation requests.

36. On July 4, 2024, the Aggrieved Individual raised her accommodation concerns with Defendant's District Human Resources Leader, explaining that the manager's office was an unworkable location to store water, as it was unreasonable for her to locate a manager to unlock the office each time she needed water, while also accomplishing her work tasks. The Aggrieved Individual also informed the District Human Resources Leader that her prior store (in Madison) had provided the water accommodation without any issues.

37.     On or about July 3, 2024, the Aggrieved Individual's store manager forwarded the Aggrieved Individual's accommodation request and supporting medical documentation to division-level human resources for further review.

38.     Defendant's human resources department reviewed the Aggrieved Individual's hydration accommodation request and after approximately two weeks determined that it would not approve the accommodation without further medical documentation.

39.     On July 15, 2024, Defendant's division-level human resources manager returned to the store and informed the Aggrieved Individual that in order to proceed with her request for a water bottle at her work station, the Aggrieved Individual would be required to sign a HIPAA release of medical records and information form. The HIPAA release would allow Defendant to access the Aggrieved Individual's private medical records and communicate directly with her healthcare providers.

40.     It is Defendant's practice to require a signed HIPAA release from employees who request work-related accommodations, regardless of whether such inquiry is reasonably necessary to assess the accommodation requests.

41.     Defendant later acknowledged to the EEOC that the HIPAA release it requested from the Aggrieved Individual was not necessary for its approval of her request to keep water at her work station.

42.     Defendant's division-level human resources manager also informed the Aggrieved Individual that the Aggrieved Individual would have to resubmit her accommodation request using a specific form.

43.     The Aggrieved Individual declined to sign the HIPAA release, citing the invasion of her privacy, and informed the human resources manager that she was considering filing a

complaint with the state regarding the lack of access to drinking water, and its impact on her infant's health.

44.    On July 18, 2024, Defendant's store manager observed the Aggrieved Individual with a water bottle at her workstation and ordered her to remove it.

45.    The Aggrieved Individual responded that adequate hydration was medically necessary and she continued to keep a bottle of water readily accessible at her workstation.

46.    Defendant's store manager responded by placing the Aggrieved Individual on an unpaid suspension.

47.    Defendant terminated the Aggrieved Individual's employment on August 16, 2024.

48.    At all relevant times, the Aggrieved Individual was a qualified employee as defined by Section 102(6) of the PWFA, 42 U.S.C. § 2000gg(6) in that she was able to perform the essential functions of her job with or without reasonable accommodation – or, to the extent she was unable to perform any essential function, that inability was temporary, she could perform the essential function again in the near future (after her need for lactation-related accommodations had ended), and the temporary inability could be reasonably accommodated.

<u>STATEMENT OF CLAIMS</u>

49.    Beginning on or about June 16, 2023, Defendant engaged in unlawful employment practices in violation of Section 103(1) of the PWFA, 42 U.S.C. § 2000gg-1(1), by failing to make reasonable accommodations to the Aggrieved Individual's known limitations related to pregnancy-related medical conditions, namely lactation and low milk supply. In particular:

a)  The Commission repeats and incorporates herein Paragraphs 1-48, above.

b) The Aggrieved Individual's lactation needs could have been accommodated by Defendant, for example, by permitting her to keep water near her work station and providing her a suitable location to express breast milk.

c) Instead, Defendant refused to accommodate the Aggrieved Individual, forbidding her from keeping water near her workstation, and failing to provide a clean and private location suitable for breast pumping.

d) In so doing, Defendant failed to make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of the Aggrieved Individual.

50.    Beginning on or about June 16, 2023, Defendant engaged in unlawful employment practices in violation of Section 103(3) of the PWFA, 42 U.S.C. § 2000gg-1(3), by denying the Aggrieved Individual employment opportunities based on the need to make reasonable accommodations to her known limitations related to pregnancy-related medical conditions, namely lactation and low milk supply. In particular:

a) The Commission repeats and incorporates herein Paragraphs 1-49, above.

b) The Aggrieved Individual requested an accommodation for her pregnancy-related limitations.

c) Defendant could have reasonably accommodated the Aggrieved Individual's pregnancy-related limitations.

d) Instead, Defendant forced the Aggrieved Individual to continue working without ready access to water or a suitable location for breast pumping, causing the Aggrieved Individual discomfort and harming her milk supply.

e) Thereafter, Defendant suspended and terminated the Aggrieved Individual's

employment, rather than accommodate her known pregnancy-related limitations.

51.    Beginning on or about July 15, 2024, Defendant engaged in unlawful employment practices in violation of Section 102(d)(4) of the ADA, 42 U.S.C. § 12112(d)(4), by making prohibited medical inquiries of the Aggrieved Individual. In particular:

a) The Commission repeats and incorporates herein Paragraphs 1-50, above.

b) Defendant was aware that the Aggrieved Individual had returned from maternity leave, had recently given birth to a child, and was lactating.

c) The Aggrieved Individual confirmed that she was lactating, and provided confirming medical documentation from her healthcare provider.

d) Defendant refused to accept the Aggrieved Individual's self-confirmation or her medical documentation.

e) Instead, Defendant insisted that the Aggrieved Individual sign a HIPAA release allowing Defendant to access her private medical information and communicate directly with her medical providers.

f) Defendant insisted on such a medical release from the Aggrieved Individual pursuant to its practice of requiring employees who request workplace accommodations to authorize release of their HIPAA-protected medical records and information, regardless of whether such an inquiry is reasonably necessary to assess the accommodation requests.

52.    The unlawful employment practices complained of above were intentional.

53.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the Aggrieved Individual's federally protected rights.

<u>PRAYER FOR RELIEF</u>

Wherefore, the EEOC respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from failing to make reasonable accommodations to the known limitations related to a qualified employee's pregnancy, childbirth, or related medical conditions.

B.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from denying employment opportunities to a qualified employee if such denial is based on the need to make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of the qualified employee.

C.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from making medical inquiries made unlawful by the ADA, including enjoining Defendant from maintaining any practice of routinely requiring the release of medical records or information in connection with workplace accommodation requests when not reasonably needed based on an individualized assessment of the circumstances.

D.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals under the PWFA and ADA and that eradicate the effects of its past and present unlawful employment practices.

E.      Order Defendant to make the Aggrieved Individual whole by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

F.      Order Defendant to make the Aggrieved Individual whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

G.      Order Defendant to make the Aggrieved Individual whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial.

H.      Order Defendant to pay the Aggrieved Individual punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

I.      Order Defendant to pay prejudgment interest to the Aggrieved Individual.

J.      Grant such further relief as the Court deems necessary and proper to the public interest.

K.      Award the EEOC its costs of this action.

<u>JURY TRIAL DEMANDED</u>

The EEOC requests a jury trial on all questions of fact raised by its Complaint that do not relate solely to equitable relief.

Dated: March 23, 2026

CATHERINE ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE

Washington, D.C., 20507

GREGORY GOCHANAUR
Regional Attorney
Chicago District Office

Justin Mulaire
Assistant Regional Attorney
Chicago District Office

/s/ Greger B. Calhan
Greger B. Calhan
Trial Attorney
Minneapolis Area Office
330 South Second Avenue, Suite 720
Minneapolis, MN 55401-2224
Telephone: (612) 552-7323
E-mail: Greger.Calhan@eeoc.gov