UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

U.S. EQUAL EMPLOYMENT
OPPORTUNITIES COMMISSION,

     Plaintiff,

and

KARI BULL,

     Proposed Plaintiff-Intervenor,

v.                                                                          Case No. 3:26-CV-00241

ROUNDY'S SUPERMARKETS, INC.,

     Roundy's.

## PLAINTIFF-INTERVENOR'S COMPLAINT

### PRELIMINARY STATEMENT

1. Kari Bull brings files her intervenor complaint and alleges claims under the Pregnant Workers Fairness Act ("PWFA"), the Americans with Disabilities Act of 1990 ("ADA"), and the Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act") against Roundy's Supermarkets, Inc. ("Roundy's").

### PARTIES

2. Kari Bull is an adult resident of Wisconsin.

3. The United States Equal Employment Opportunities Commission ("EEOC") is an agency of the federal government of the United States of America.

4.    Roundy's Supermarkets, Inc. is a business corporation organized under the laws of Wisconsin. Roundy's registered agent in Wisconsin is Corporation Service Company, 33 East Main Street, Suite 610, Madison, Wisconsin 53703.

## JURISDICTION AND VENUE

5.    The Court has original jurisdiction over Ms. Bull's PWFA, ADA, and PUMP Act claims under 28 U.S.C. § 1331.

6.    Venue is proper in the United States District Court for the Western District of Wisconsin under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in this district.

## ADMINISTRATIVE PROCEDURES

7.    In June 2024 and July 2024, Ms. Bull notified Roundy's of its failure to provide her with a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, where she could pump.

8.    Ms. Bull provided Roundy's with 10 days from her notifications to allow it to come into compliance with the PUMP Act before she filed this action.

9.    On September 12, 2024, Ms. Bull filed a charge of discrimination regarding the facts alleged herein with the EEOC.

10.    On March 25, 2025, the EEOC issued Roundy's a letter of determination, and then on May 8, 2025, the EEOC issued to Roundy's an amended letter of determination, finding reasonable cause to believe that Roundy's violated the PWFA when it denied Ms. Bull accommodations for her pregnancy-related medical conditions and denied her employment opportunities because of the need for the

2

accommodation and violated the ADA when it subjected her to unlawful medical inquiries.

11.     The EEOC invited Roundy's to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12.     The EEOC engaged in communications with Roundy's to provide it the opportunity to remedy the discriminatory practices described in the letters of determination.

13.     The EEOC was unable to secure from Roundy's a conciliation agreement acceptable to the agency.

14.     On May 15, 2025, the EEOC issued Roundy's a notice of failure of conciliation.

15.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

16.     Roundy's is a large supermarket chain with stores across the Midwest.

17.     Roundy's owns and operates grocery stores under a variety of names, including Pick 'n Save and Metro Market.

18.     At all times relevant, Roundy's continuously had more than 500 employees.

3

19. At all times relevant, Roundy's regularly engaged in interstate commerce through the sale and delivery of food products and other goods across state lines.

20. Roundy's employed Ms. Bull as a cake decorator from on or about September 13, 2023, through on or about August 16, 2024.

21. Ms. Bull began her employment at Roundy's Pick 'n Save store in Madison, Wisconsin.

22. During her employment, Ms. Bull became pregnant and took maternity leave following the birth of her child in early 2024.

23. Following the birth of her child, Ms. Bull was lactating and breastfeeding.

24. Ms. Bull returned to work on June 3, 2024, at the same Pick 'n Save store in Madison, Wisconsin.

25. Ms. Bull continued to lactate and breastfeed her child after June 3, 2024.

26. Upon returning to work, Ms. Bull requested two accommodations to support lactation: a 20-minute break every four hours to pump breast milk and access to drinking water at her workstation to maintain hydration and milk supply.

27. Ms. Bull provided store management with a doctor's letter explaining and supporting both accommodation requests.

28. Store management at the Madison Pick 'n Save approved both requests.

4

29.    On or about June 16, 2024, Roundy's transferred Ms. Bull to another one of its grocery stores, located in Shorewood Hills, Wisconsin, which operated under the Metro Market brand name.

30.    Ms. Bull renewed her two accommodation requests to management at Roundy's' Shorewood Hills Metro Market.

31.    Roundy's' store manager approved Ms. Bull's request for pumping breaks and offered one of two locations for that purpose: a manager's office and a work room used for labeling merchandise.

32.    The manager's office was frequently locked, and Ms. Bull did not have a key for the lock.

33.    The manager's office was not available each time Ms. Bull needed to use it for pumping.

34.    The work room was dirty.

35.    The work room was not free from intrusion from coworkers.

36.    The work room was the location for training and pricing work, so the pricing manager and others would interrupt Ms. Bull while she was pumping.

37.    As a result of these inadequate pumping spaces, Ms. Bull was forced to pump in her car on occasion.

38.    Roundy's' store manager denied Ms. Bull's request for access to water at her workstation.

39. On information and belief, Roundy's did not have a written policy addressing PWFA accommodations at the time of Ms. Bull's employment or during the EEOC's investigation of her charge of discrimination.

40. On information and belief, Roundy's does not presently have a written policy addressing PWFA accommodations.

41. Roundy's' store manager permitted Ms. Bull to store a bottle of water in the same manager's office the store manager offered for pumping.

42. This office was located some distance from Ms. Bull's workstation and was frequently locked, requiring her to seek out a manager to unlock the office in order to remain hydrated and maintain milk supply.

43. On July 3, 2024, Roundy's' store manager observed Ms. Bull with a water bottle near her workstation in the Metro Market bakery and instructed her to remove it.

44. Ms. Bull explained that adequate hydration was medically necessary to maintain milk supply.

45. Roundy's' store manager claimed that company policy prohibited employees from keeping water at or near bakery workstations.

46. On the evening of July 3, 2024, Ms. Bull emailed Roundy's' store manager a copy of her medical provider's letter explaining and supporting the accommodation requests.

47. On July 4, 2024, Ms. Bull raised her accommodation concerns with Roundy's' District Human Resources Leader, explaining that the manager's office

was an unworkable location to store water, as it was unreasonable for her to locate a manager to unlock the office each time she needed water, while also accomplishing her work tasks. Ms. Bull also informed the District Human Resources Leader that her prior store (in Madison) had provided the water accommodation without any issues.

48.    On information and belief, on or about July 3, 2024, Ms. Bull's store manager forwarded Ms. Bull's accommodation request and supporting medical documentation to division-level human resources for further review.

49.    On information and belief, Roundy's' human resources department reviewed Ms. Bull's hydration accommodation request and after approximately two weeks determined that it would not approve the accommodation without further medical documentation.

50.    On July 15, 2024, Roundy's' division-level human resources manager returned to the store and informed Ms. Bull that in order to proceed with her request for a water bottle at her work station, Ms. Bull would be required to sign a HIPAA release of medical records and information form. The HIPAA release would allow Roundy's to access Ms. Bull's private medical records and communicate directly with her healthcare providers.

51.    It is Roundy's' practice to require a signed HIPAA release from employees who request work-related accommodations, regardless of whether such inquiry is reasonably necessary to assess the accommodation requests.

7

52.    On information and belief, Roundy's later acknowledged to the EEOC that the HIPAA release it requested from Ms. Bull was not necessary for its approval of her request to keep water at her work station.

53.    Roundy's' division-level human resources manager also informed Ms. Bull that Ms. Bull would have to resubmit her accommodation request using a specific form.

54.    Ms. Bull declined to sign the HIPAA release, citing the invasion of her privacy, and informed the human resources manager that she was considering filing a complaint with the state regarding the lack of access to drinking water and its impact on her infant's health.

55.    On or about July 17, 2024, Ms. Bull complained to the U.S. Department of Labor about the pumping spaces at Roundy's' Shorewood Hills Metro Market and informed Roundy's of her complaint.

56.    On July 18, 2024, Roundy's' store manager observed Ms. Bull with a water bottle at her workstation and ordered her to remove it.

57.    Ms. Bull responded that adequate hydration was medically necessary, and she continued to keep a bottle of water readily accessible at her workstation.

58.    Roundy's' store manager responded by placing Ms. Bull on an unpaid suspension.

59.    Roundy's terminated Ms. Bull's employment on August 16, 2024.

60.    As a result of Roundy's actions alleged herein, Ms. Bull has experienced a decrease in her breast milk supply for her child.

61.    As a result of Roundy's actions alleged herein, Ms. Bull has suffered financial loss and emotional distress.

**FIRST CLAIM FOR RELIEF:**
**PWFA VIOLATIONS**

62.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

63.    Roundy's is a covered entity within the meaning of 42 U.S.C. § 2000gg(2).

64.    At all relevant times, Ms. Bull was an employee of Roundy's within the meaning of 42 U.S.C. § 2000gg(3).

65.    At all relevant times, Ms. Bull was a qualified employee within the meaning of 42 U.S.C. § 2000gg(6) in that she was able to perform the essential functions of her job with or without reasonable accommodation or, to the extent she was unable to perform any essential function, that inability was temporary, she could perform the essential function again in the near future (after her need for lactation-related accommodations had ended), and the temporary inability could be reasonably accommodated.

66.    As alleged herein, Roundy's failed to make a reasonable accommodation to her known limitation to the pregnancy, childbirth, or related medical conditions of Ms. Bull in violation of 42 U.S.C. § 2000gg-1(1).

67.    As alleged herein, Roundy's required Ms. Bull to accept an accommodation other than any reasonable accommodation arrived at through the interactive process in violation of 42 U.S.C. § 2000gg-1(2).

9

68.    As alleged herein, Roundy's denied employment opportunities to Ms. Bull based on its need to make reasonable accommodations to her known limitations related to the pregnancy, childbirth, or related medical conditions in violation of 42 U.S.C. § 2000gg-1(3).

69.    As alleged herein, Roundy's took adverse actions in the terms, conditions, or privileges of employment of Ms. Bull on account of her request for or use of a reasonable accommodation to her known limitations related to the pregnancy, childbirth, or related medical condition in violation of 42 U.S.C. § 2000gg-1(5).

70.    As alleged herein, Roundy's discriminated against Ms. Bull because she opposed an act or practice made unlawful under the PWFA in violation of 42 U.S.C. § 2000gg-2(f)(1).

71.    Roundy's actions alleged herein were intentional.

72.    Roundy's actions alleged herein were done with malice or with reckless indifference to Ms. Bull's rights.

**SECOND CLAIM FOR RELIEF:**
**ADA VIOLATIONS**

73.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

74.    Roundy's is a covered entity within the meaning of 42 U.S.C. § 12111(2).

75.    As all relevant times, Ms. Bull was an employee of Roundy's within the meaning of 42 U.S.C. § 12111(4).

10

76.    As alleged herein, Roundy's required a medical examination and/or made an inquiry of Ms. Bull as to whether she is an individual with a disability or as to the nature or severity of a disability in violation of 42 U.S.C. § 12112(d)(4).

77.    Roundy's actions alleged herein were intentional.

78.    Roundy's actions alleged herein were done with malice or with reckless indifference to Ms. Bull's rights.

**THIRD CLAIM FOR RELIEF:**
**PUMP ACT VIOLATIONS**

79.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

80.    Roundy's is an employer within the meaning of 29 U.S.C. § 203(d).

81.    At all times relevant, Ms. Bull was an employee of Roundy's employee within the meaning of 29 U.S.C. § 203(e)(4).

82.    As alleged herein, Roundy's failed to provide Ms. Bull with a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which could be used to express breast milk in violation of 29 U.S.C. § 218d(a)(2) and 29 U.S.C. § 215(a)(6).

83.    As alleged herein, Roundy's discriminated against Ms. Bull because she made a PUMP Act complaint by suspending and terminating her employment in violation of 29 U.S.C. § 215(a)(3).

## REQUEST FOR RELIEF

Ms. Bull respectfully requests that this Court:

A.      Enter judgment against Roundy's;

B.      Order Roundy's to make Ms. Bull whole by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

C.      Order Roundy's to make Ms. Bull whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

D.      Order Roundy's to make Ms. Bull whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial;

E.      Order Roundy's to pay Ms. Bull punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial;

F.      Order Roundy's to pay prejudgment interest to Ms. Bull;

G.      Order Roundy's to pay Ms. Bull her lost wages and an equal amount in liquidated damages;

H.      Order Roundy's to pay Ms. Bull the reasonable attorneys' fees and costs she incurred in prosecuting this action;

I.      Grant any further legal or equitable relief as may be appropriate to effectuate the purposes of the PUMP Act; and

J.      Grant any further relief that the Court deems just and equitable.

Dated this 9th day of April, 2026.

**HAWKS QUINDEL, S.C.**
*Attorneys for Kari Bull*


By: ___*/s Connor J. Clegg*_____
Colin B. Good, State Bar No.: 1061355
Email: cgood@hq-law.com
Connor J. Clegg, State Bar No.: 1118534
Email: cclegg@hq-law.com
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236